Charlene D. WHITE, Debtor.

No. 02–04050.

United States Bankruptcy Court,
N.D. Iowa.

April 17, 2003.

Kevin D. Ahrenholz, Waterloo, IA, for Debtor.

Iowa Department of Revenue, Des Moines, IA, Mark E. Mershon, Cedar Falls, IA, U.S. Attorney—CR, Cedar Rapids, IA, for Creditor.

## ORDER RE OBJECTION TO EXEMPTION

PAUL J. KILBURG, Chief Judge.

This matter came before the court on March 5, 2003. Creditor Cedar Falls Community Credit Union (the "Credit Union") was represented by Mark Mershon. Debtor Charlene D. White was present, represented by attorney Kevin Ahrenholz. After presentation of evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF THE CASE

The Credit Union filed an objection to Debtor's homestead exemption on December 18, 2002. It asserts Debtor's homestead is not exempt from four claims held by the Credit Union which constitute pre-acquisition debt. Debtor asserts Iowa law protects her homestead from the Credit Union's claims.

## FINDINGS OF FACT

Debtor has resided in a series of homesteads with former spouses, as follows:

| From To | Address | Current Assessed Value |
|---|---|---|
| 1975 1995 | 3519 Boulder Drive | $124,000 |
| 1995 11/99 | 2115 Cardinal Drive | 162,200 |
| 5/00 3/01 | 2627 Heather Lane | 165,000 (8/01 sale price) |
| 3/01 present | 2541 Manor St. | 94,000 |

Debtor testified that proceeds from the homesteads on Boulder Drive and Cardinal Drive were used to partially pay for the house on Heather Lane. Debtor and her former husband built the house on Heather Lane using funds loaned by the Credit Union in February and April 2000.

The construction loan was secured by the Heather Lane real estate. Apparently, the construction costs exceeded permissible limits on the construction loan. To complete the home, a second note was executed. The note, however, appears as a separate note with the Debtor's automobile as collateral without reference to the real estate.

About the time of completion of the Heather Lane home, Debtor lived in an apartment for a brief period because of timing problems between the sale of the Cardinal Drive property and completion of the Heather Lane property. The evidence suggests that the proceeds of the sale may have been placed in an interest bearing account for a brief period.

After completion of the Heather Lane home, Debtor and her husband separated and the house was sold.

When Debtor sold that property on August 31, 2001, the Credit Union received payment on the two loans but a deficiency remained. This deficiency was $16,257.32 as of the date Debtor filed her Chapter 13 petition on November 14, 2002.

Debtor currently resides at 241 Manor Street. She purchased this home by contract on March 2, 2001. She paid off the contract in full and received a deed in September 2001. Debtor withdrew money from her retirement plan to pay off this contract.

The Credit Union asserts four claims against Debtor's homestead as follows:

1. The construction loan taken out by Debtor on April 11, 2000.
2. The second note in which the automobile was used as collateral on February 6, 2000.
3. A VISA credit card issued through the Credit Union in August 1989.
4. An open line of credit with the Credit Union for check protection.

In its Brief filed March 14, 2003, the Credit Union concedes Debtor's homestead is exempt as to the last two claims. The remaining claims relate to the construction loan and a loan secured by Debtor's vehicle. The total amount due, according to the proof of claim, is $16,257.32.

## SUMMARY OF ISSUES

The Credit Union's written objection to the two claims is general in nature and states only that: The obligation to the Cedar Falls Community Credit Union arose prior to acquisition of the Debtor's homestead. No specifics are provided. At the time of hearing, the Credit Union summarized its objection by stating that Debtor had no equity from the Heather Lane property to apply to the Manor Street property and, therefore, the continuity of her homestead exemption was interrupted.

The Credit Union filed its Brief on March 14, 2003. It reasserts the argument that when the previous homestead was sold, there were no proceeds from the sale and, thus, the homestead did not carry forward to her present property. Additionally, the Credit Union asserts that Debtor had waived her homestead exemption as to her previous homestead. It also argues that, as there was a deficiency after the sale, this deficiency and waiver were carried forward to her present homestead. There also appears to be some argument by the Credit Union that the present homestead exemption is subject to these debts because Debtor lived for a brief period in a rental apartment between the sale of her previous homestead and occupancy of the present home. Finally, there appears to be an argument that, because certain funds from the sale of real estate were held in a bank account for a brief period, this disrupts the continuity of the homestead exemption. These are the only

arguments which the Court gleans from the pleadings and arguments.

## BURDEN OF PROOF

█ Debtor claims her homestead at 2541 Manor St. is exempt from the Credit Union's claim under Iowa law. The Credit Union, as the objecting party in interest, has the burden of proving that Debtor's homestead exemption is not properly claimed. Fed. R. Bankr.P. 4003(c); *In re Stenzel,* 301 F.3d 945, 947 (8th Cir.2002). In Chapter 13 cases, the allowance of an exemption impacts on confirmation of a plan. Both the availability and the amount of a homestead exemption can impact whether the Chapter 13 plan satisfies § 1325(a)(4), the best interests of creditors test. *See In re Van Der Heide,* 164 F.3d 1183, 1184 (8th Cir.1999). Debtor's initial plan proposes total payment to unsecured creditors of $13,976.54. If Debtor's homestead is not properly claimed exempt from the Credit Union's claim, the total payment to unsecured creditors in Debtor's plan must be at least $16,257.32 in order for the plan to be confirmed under § 1325(a)(4).

## HOMESTEAD WAIVER

█ In its post-trial brief, the Credit Union asserts Debtor waived her homestead exemption on the Heather Lane property when she signed the note and mortgage.[1] It argues this waiver continues to be effective against Debtor's current homestead on Manor Street. Although the Exhibits introduced at trial do not contain a written homestead waiver, Debtor does not refute that her Heather Lane property was subject to the Credit Union's lien. The Credit Union argues that its claim can attach to Debtor's current homestead on Manor Street because the homestead exemption had been waived by the contract signed by Debtor regarding the Heather Lane property. The Credit Union cites no authority for this proposition.

This Court has stated that a waiver of the homestead exemption in a mortgage is only effective against the property described therein. *In re Ziesman,* 1985 WL 17362, at *7 n. 2 (Bankr.N.D.Iowa May 31, 1985) (Thinnes, J.). "To allow an 'infinite homestead waiver' would be against public policy." *Id.; see also Maguire v. Kennedy,* 91 Iowa 272, 59 N.W. 36, 37 (Iowa 1894) (same).

This Court concludes Debtor did not waive the right to claim her Manor Street home exempt as her homestead based on any contract or agreement with the Credit Union concerning the home on Heather Lane. A similar situation arising under Vermont law was examined in *In re Soter,* 31 B.R. 986, 990 (D.Vt.1983). There, the court stated that a homestead waiver in a mortgage related only to that real estate, to the extent of its value. The property was overmortgaged and the creditor was undersecured. *Id.* After foreclosure, the creditor held an unsecured claim with a personal judgment against the debtor for the deficiency. *Id.* This is the type of debt which is dischargeable in bankruptcy; the creditor had no "right to the new homestead as additional collateral." *Id.* For these reasons, the Credit Union's argument on this issue is without merit.

## PREACQUISITION DEBT EXCEPTION TO EXEMPTION

█ The Credit Union argues that upon sale of the Heather Lane property, there

---

1. The credit union argues that the second note using an automobile should be legally treated in the same manner as the note and mortgage since the proceeds were used to complete the home. The Court finds little legal support for such a contention, though it need not resolve it because of this ruling.

were no proceeds with which to apply to the Manor Street property and, therefore, the homestead chain is broken.

In Iowa, "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16 (2001). The Credit Union seeks to impose the exception to Debtor's homestead exemption in sec. 561.21(1), which states:

> The homestead may be sold to satisfy debts of each of the following classes: 1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

As Debtor purchased a new home subsequent to entering into the loan transactions with the Credit Union, sec. 561.20 is also applicable:

> Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been.

Iowa Code § 561.20 (2001).

A person may acquire rights in a new homestead in the following ways: 1) by purchase, with funds not derived from the old homestead, or 2) by changing from one homestead to another by a) exchange or b) purchase of a new homestead with the proceeds of the old. *In re Litwiller*, 2002 WL 1446780, at *3 (Bankr.N.D.Iowa July 2, 2002); *Blue v. Heilprin*, 105 Iowa 608, 75 N.W. 642, 644 (Iowa 1898). Proceeds from the sale of a homestead, which are reinvested in a new homestead, remain exempt from debt which predates the debtor's acquisition of the old homestead. *In re Hayes*, 1996 WL 1038496, at *3 (Bankr.N.D.Iowa Dec. 10, 1996); *Millsap*

*v. Faulkes*, 236 Iowa 848, 20 N.W.2d 40, 41–42 (Iowa 1945).

The effect of changing homesteads is that the homestead rights are transferred to the new property. *Litwiller*, at *2. As the former is exempt from liability, the new homestead is equally exempt. *In re Johnson*, 118 F. 312, 314 (N.D.Iowa 1902). As long as the value exchanged between the old and new homesteads remains unchanged, creditors are not prejudiced. *In re Estes*, No. 87–02006W, slip op. at 4 (Bankr.N.D.Iowa March 28, 1988). Where a debtor changes from one homestead to another, the fact that the Debtor had no equity in the former is irrelevant. *In re Whyle*, No. 96–31970XF, slip op. at 2 (Bankr.N.D.Iowa Nov. 26, 1996). Where the former homestead is transmuted by exchange into another homestead, the new one is a continuance of the old and the exemption dates from the acquisition and occupancy of the old. *American Sav. Bank v. Willenbrock*, 209 Iowa 250, 228 N.W. 295, 298 (Iowa 1929). This is so, even though the debtor's means other than the old are used to acquire the new homestead. *Id.*

For these reasons, the fact that Debtor had no proceeds from the Heather Lane property to apply toward the Manor Street property is irrelevant. The homestead exemption is carried over into the new property undiminished even though no proceeds from the previous sale are brought forward. The Credit Union's argument on this issue is without merit.

### RESIDENCE IN APARTMENT

Debtor apparently lived for a brief period of time in an apartment because the parties' home on Cardinal Drive had been sold and their home on Heather Lane was not complete. While not abundantly clear, the Credit Union seems to imply that the continuity of the homestead

exemption lapsed because of this time living in an apartment. As previously examined, the homestead exemption in Iowa is peculiarly favored and once the homestead status is attained, it is deemed to continue until clearly established that the status has been abandoned.

■ Intent to abandon is the primary criteria in evaluating loss of the exemption. There is great reluctance to declare abandonment of the exemption simply because of a temporary absence from a homestead. *Elliott v. Till,* 219 Iowa 649, 259 N.W. 460, 463 (Iowa 1935); *Schaffer v. Campbell,* 198 Iowa 43, 199 N.W. 334, 338 (Iowa 1924).

It is clear from the record presented that Debtor had no intention of abandoning the exemption. Any brief residence in an apartment was based upon necessity because construction of the Heather Lane property was not complete. These circumstances compel the conclusion that the homestead exemption previously established did not terminate because of this action. Therefore, any argument made by the Credit Union to the contrary on this issue is without merit.

## PLACEMENT OF FUNDS IN SAVINGS ACCOUNT

■ The Credit Union's position on this issue is not expressly stated. However, the Credit Union appears to imply, if not directly state, that placement of sale proceeds of one house in a bank account can constitute termination of the homestead exemption.

Two reasons establish such a position is without merit. First, as previously set out in this opinion, it is not necessary to carry proceeds forward to preserve an exemption. Therefore, placement of funds in a bank account, absent anything further, would be largely irrelevant on the issue. Secondly, and most importantly, practical finance would require placement of funds

in a bank account for some period. As long as the funds are traceable and the transaction is carried out with the intent to preserve the exemption, this fact will not constitute abandonment of the exemption.

There is no claim here that the funds were not traceable or that Debtor intended, by this conduct, to abandon the exemption. Absent evidence to the contrary, the exemption remains intact. The Credit Union's argument, to the extent it is proffered, is without merit.

## CONCLUSION

■ The homestead right in Iowa is peculiarly favored. *Gustafson v. Fogleman,* 551 N.W.2d 312, 314 (Iowa 1996). The homestead exemption statute is provided even more deference than other Iowa exemption statutes. *See Berner v. Dellinger,* 206 Iowa 1382, 222 N.W. 370, 372 (Iowa 1928) (holding that Court must liberally construe the homestead exemption statutes in the debtor's favor); *Brown v. Vonnahme,* 343 N.W.2d 445, 451 (Iowa 1984) ("The purpose of homestead laws is to provide a margin of safety to the family."); *In re Marriage of Tierney,* 263 N.W.2d 533, 534 (Iowa 1978).

In this state, homestead statutes are broadly and liberally construed in favor of exemption. "Regard should be had to the spirit of the law rather than its strict letter." The homestead exemption is not "for the benefit of the husband or wife alone, but for the family of which they are a part." Further still, we have recognized that the exemption is not only "for the benefit of the family, but for the public welfare and social benefit which accrues to the state by having families secure in their homes." The policy of our law is to jealously safeguard homestead rights.

*In re Matter of Bly,* 456 N.W.2d 195, 199 (Iowa 1990) (citations omitted).

The Credit Union holds an unsecured claim of $16,257.32 which arose after the Heather Lane property was sold in an amount which failed to fully satisfy its mortgage on the property. It did not bring this debt to judgment prepetition. The Credit Union was undersecured by Debtor's Heather Lane property. Any homestead waiver as to that property was extinguished, as was the Credit Union's lien, after the sale and does not continue as to Debtor's subsequent homestead property. Thus, the homestead waiver and the Credit Union's lien on the Heather Lane property are irrelevant in the Court's determination of whether its claim can be enforced against Debtor's Manor Street homestead.

■■■ Debtor changed her homestead from Heather Lane to Manor Street under sec. 561.20. Previously, she had changed homesteads from Cardinal Drive to Heather Lane, and earlier from Boulder Drive to Cardinal Drive. Debtor has provided the Court with the assessed value amounts for all these properties. The Manor Street property is assessed lower than the previous homesteads. The Credit Union has not refuted these values. Thus, Debtor's homestead right was "acquired" in 1975 with her first homestead purchase, and the following changes in homestead continued that right into the Manor Street property. As the Credit Union's unsecured claim does not predate the original homestead acquisition, it may not be enforced against any of the subsequent homesteads, including the Manor Street property.

Two powerful principles of law which are applicable, among others, support this decision. One is the liberal construction required of the Court in applying the homestead exemption. The other is the burden placed on the Credit Union to

prove that Debtor's homestead exemption is not properly claimed. Under the facts of this case, and under Iowa homestead law, the Court concludes the Credit Union has failed to meet its burden and Debtor is entitled to hold her homestead exempt from the Credit Union's claim as a matter of law.

**WHEREFORE,** the Objection to Exemption filed by Cedar Falls Community Credit Union is OVERRULED.

**FURTHER,** Debtor's homestead at 2541 Manor Street, Waterloo, Iowa is exempt from the Credit Union's claim.