http://www.va.gov/vetapp16/Files4/1630486.txt

Citation Nr: 1630486 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 05-15 977 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUES

1. Entitlement to a compensable disability rating for service-connected acne. 

2. Entitlement to an increased initial disability rating for service-connected residuals of a right ankle injury, rated as noncompensable prior to November 3, 2010, and rated as 10 percent disabling thereafter.

3. Entitlement to an increased initial disability rating in excess of 50 percent for service-connected posttraumatic stress disorder (PTSD). 

4. Entitlement to an effective date prior to November 3, 2010 for the assignment of a 10 percent evaluation for service-connected residuals of a right ankle injury.

5. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities. 

REPRESENTATION

Veteran represented by: Ronald Skystus, Attorney

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Steve Ginski, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Marine Corps from June 1966 to May 1968, and in the U.S. Air Force from April 1971 to April 1989. The Veteran is in receipt of, among other medals, a Purple Heart. These matters come before the Board of Veterans' Appeals (Board) on appeal from November 2004, July 2010, and April 2012 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. Jurisdiction of the Veteran's claims is now with the RO in Nashville, Tennessee. 

The Board notes that the claims of entitlement to service connection for a skin disability other than acne, to include hidradenitis and neurodermatitis, gastroesophageal reflux disease and peptic ulcer disease, degenerative joint disease of the left wrist, residuals of a left arm wound, lumbar and cervical spine disabilities, and bronchitis, are in appellate status. The Veteran presented testimony for these appeals in November 2010 before an Acting Veterans Law Judge, and in March 2011, the Board remanded the claims for further development. It appears that the RO is still working these claims as no supplemental statement of the case has yet been issued. These issues will be decided by the Veterans Law Judge to whom relevant testimony was provided in November 2010 upon their return to the Board. 

The Veteran appeared before the undersigned Veterans Law Judge in January 2016 for a videoconference hearing. A transcript of this hearing is of record. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.

REMAND

Remand regarding all claims on appeal is required to obtain relevant federal records. VA has a duty to assist claimants to obtain evidence needed to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015). This includes making as many requests as are necessary to obtain relevant records from a Federal department or agency, including, but not limited to, records from Federal agencies such as the Social Security Administration (SSA). 38 C.F.R. § 3.159(c)(2). The Veteran has indicated he is in receipt of Social Security Disability benefits and/or Supplemental Security Income benefits. Most recently, in a September 2015 update from the SSA, the Veteran was listed as being in receipt of disability benefits from SSA. The medical records upon which the award was based have not been associated with the record, and the Board finds that such records may be pertinent to his claims. Remand is necessary, therefore, in order to obtain any outstanding relevant SSA records. 

Next, the Board finds that new examinations are warranted for the Veteran's claims of entitlement to increased disability ratings for PTSD, residuals of a right ankle injury, and acne. Where the Veteran asserts, or the evidence reflects, that a disorder has worsened since a prior examination, a new examination must be ordered. See VAOPGCPREC 11-95 (April 7, 1995); Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994). 

Regarding PTSD, the Veteran testified in January 2016 that his PTSD had progressively worsened. The Veteran was last examined for his PTSD in June 2014. At the 2016 Board hearing, the Veteran reported that he changed medication for his PTSD recently while describing how his symptoms had worsened. Regarding acne, although the Veteran recently underwent an examination for his skin in January 2016, at the 2016 hearing, the Veteran described acne affecting over 40 percent of his body, and he described having acne on his back, arms, legs, and all cover his body. These statements, if true, represent a worse state of acne than identified in the January 2016 examination. Regarding residuals of a right ankle injury, at the January 2016 hearing, the Veteran reported that his right ankle disability had worsened and described having flare-ups. At the June 2014 examination, the Veteran denied flare-ups. In light of the testimony and evidence regarding each of the above-noted issues, new examinations must be conducted to ascertain the current severity of the service-connected disabilities. 

Finally, the Board notes that the issue of entitlement to TDIU is inextricably intertwined with the increased rating issues remanded herein. Harris v. Derwinski, 2 Vet. App. 180, 183 (1991). Hence, a determination on the claim for TDIU should be deferred pending final disposition of the increased rating issues.

Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

2. Contact the SSA and obtain a copy of that agency's decision concerning the Veteran's claim for disability benefits, including any medical records used to make the decision. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 
 
3. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

4. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the severity of the service-connected PTSD. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. The examiner must utilize the appropriate Disability Benefits Questionnaire. 

5. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the severity of the service-connected acne. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. The examiner must utilize the appropriate Disability Benefits Questionnaire. The examiner must also address the Veteran's January 2016 testimony that describes acne on his arms, legs, and back, covering an estimated 40 percent of his body. 

6. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the severity of the service-connected residuals of a right ankle injury. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. The examiner must utilize the appropriate Disability Benefits Questionnaire. 

The examiner must comment on the severity of the Veteran's residuals of a right ankle injury and report all signs and symptoms necessary for rating the disability, including the range of motion in degrees. He or she must also identify any other symptomatology and manifestations of the disability. The examiner must identify all current diagnoses associated with the Veteran's right ankle disability. The presence of objective evidence of pain, excess fatigability, incoordination, and weakness should also be noted, as should any additional disability due to these factors, including additional loss of range of motion. The examiner must test the right ankle for pain on both active and passive motion, in weight-bearing and nonweight-bearing, and, if possible, with the range of the opposite undamaged joint. The examiner must discuss any additional functional impairment that the Veteran experiences during a flare-up. 

7. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

8. Ensure complete compliance with the directives of this remand. If a report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

9. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
K.MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).