Citation Nr: 1808267 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 10-42 878 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for a back condition. 

2. Entitlement to service connection for bilateral lower extremity radiculopathy, to include as secondary to a back condition. 

3. Entitlement to service connection for an acquired psychiatric disorder, to include as secondary to any service-connected disabilities. 

4. Entitlement to service connection for sleep apnea. 


REPRESENTATION

Veteran represented by: Jan D. Dils, Attorney




WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. O'Donnell, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Air Force from February 1988 to June 1988, from October 1990 to July 1991, and from January 2005 to May 2005. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from January 2010 and March 2010 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. 

In March 2013, the Veteran testified before the undersigned at a video-conference Board hearing. A transcript of the hearing is included in the claims file.

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

The Board finds the claim must again be remanded for additional development. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance). To that end, in the Board's April 2014, the RO was to obtain verification with regard to the Veteran's periods of active duty. However, the record does not reflect that such verification has not been made. 


Acquired Psychiatric Disorder 

The Veteran contends that he is entitled to service connection for an acquired psychiatric disorder. In June 2017, VA scheduled the Veteran for an examination to determine the nature and etiology of any of the Veteran's acquired psychiatric disorders. The Veteran did not attend the examination. To that end, the Board acknowledges that there is no indication of record that the Veteran received notification of his scheduled VA examination. As such, the Board finds that a new examination is warranted to determine the nature and etiology of any acquired psychiatric disorders. 


Back Condition 

In September 2010, the Veteran was afforded a VA examination to determine the nature and etiology of his back condition. The Veteran was diagnosed with lumbar spondylosis with degenerative joint disease, which the examiner opined was less likely than not caused by or a result of his military service. In her rationale, the examiner reported that the Veteran consistently denied back pain or a back condition during his periods of active duty.

The Board finds that this opinion is inadequate to decide the claim. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). With regard to the back condition opinion, the Board finds that the rationale is inadequate as the examiner cannot rely solely on the absence of treatment or diagnoses in a Veteran's service treatment records as a basis for a negative medical opinion. 

Sleep Apnea

In September 2010, the Veteran was afforded a VA examination to determine the nature and etiology of his sleep apnea. The examiner opined that the Veteran's diagnosed sleep apnea was less likely than not caused by or a result of military service. To that end, the examiner reported that in 2005, the Veteran denied still feeling tired after sleep. Further, the examiner reported that there was no evidence in the Veteran's medical records of sleep complaints until 2008. However, the examiner did not address the Veteran's assertion that his sleep apnea originated in service. Thus, the Board finds that the opinion is inadequate. An examiner must consider lay statements regarding in-service occurrence of an injury. Dalton v. Nicholson, 21 Vet. App. 23 (2007) (examination inadequate where the examiner did not comment on Veteran's report of in-service injury and relied on lack of evidence in service medical records to provide negative opinion).

Bilateral Lower Extremity Radiculopathy 

The Board also notes that the issue of entitlement to bilateral lower extremity radiculopathy is inextricably intertwined with the claim for entitlement to service connection for a back condition remanded herein, as the Veteran has claimed this condition as secondary to a back condition. Harris v. Derwinski, 2 Vet. App. 180, 183 (1991). Hence, a determination on the claim for entitlement to service connection for bilateral lower extremity radiculopathy should be deferred pending final disposition of the claim for entitlement to service connection for a back condition. 


Accordingly, the case is REMANDED for the following action:


1. Contact the appropriate records custodian to verify all periods of the Veteran's active duty, active duty for training or inactive duty for training. 

2. Obtain the necessary authorization from the Veteran and then attempt to obtain any relevant treatment records from Charleston Area Medical Center, as of 2009, and from the Elk Memorial Clinic. All attempts to obtain these records must be documented in the claims file. The RO must make two attempts to obtain these records unless the first attempt demonstrates that further attempts would be futile. If no records are obtained, the RO must (1) inform the Veteran of what records were not obtained, (2) what steps were taken to obtain them, and (3) tell the Veteran that the claim will be adjudicated without the records but that if he later submits them, the claim may be reconsidered. See 38 U.S.C. § 5103A(b)(2)(B) (West 2014). 

3. Schedule the Veteran for a psychiatric examination in order to determine the etiology of any current acquired psychiatric disorder that may be present, to include dysthymia disorder, major depressive disorder, and anxiety disorder, not otherwise specified. The examiner must elicit from the Veteran a history of his psychiatric symptoms, to include whether he experienced any symptoms during service. The examiner must review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and lay statements.
 
The examiner must identify all current psychiatric disorders. If any previously diagnosed disorder is no longer present, the examiner must provide an explanation. 

For each disorder identified, the examiner must state whether it is at least as likely as not (a 50 percent or greater probability) that that any currently diagnosed psychiatric disorder began in service, was caused by service, or is otherwise related to service. 
If the answer to the above question is no, then the examiner is asked to offer an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that any diagnosed acquired psychiatric disorder was caused or aggravated by any of the Veteran's service-connected disabilities. 

Aggravation is defined as a permanent worsening beyond the natural progression of the disability.

The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is as medically sound to find in favor of such a conclusion as it is to find against it.

A clear rationale must be provided for any opinion offered.

4. After completing the foregoing development, schedule the Veteran for a VA examination to determine the nature and etiology of the Veteran's back condition. The examiner should review all pertinent records associated with the claims file. 

The examiner should opine as to whether it is at least as likely as not (50 percent probability or greater) that the Veteran's back disability began in service, was cause by service, or is otherwise etiologically related to his active service. 

The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find favor of conclusion as it is to find against it.

A clear rationale must be provided for any opinion offered.

5. Return the claims file to an appropriate VA examiner in order to obtain an opinion as to the nature and etiology of the Veteran's sleep apnea. If a new examination is deemed necessary to respond to this request, one should be scheduled. 

The examiner should review the claims file and provide and addendum opinion addressing whether it is at least as likely as not (50 percent probability or greater) that the Veteran's diagnosed sleep apnea began in service, was caused by service, or is otherwise etiologically related to his active service. Specifically, the examiner must acknowledge the Veteran's lay report of onset in service. Also, the examiner should address the February 2012 lay statement from D.M., as well as April 2010 lay statement from W.H. 

The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find favor of conclusion as it is to find against it.

A clear rationale must be provided for any opinion offered.

6. In the event that the Veteran does not report for any scheduled examination, documentation should be obtained which shows that notice scheduling the examination was sent to the Veteran's last known address and to his representative, if applicable. It should also be indicated whether any notice sent was returned as undeliverable. 
 
7. After completing the above actions and any other development as may be indicated as a consequence of the actions taken in the preceding paragraphs, to include any necessary development as to the Veteran's bilateral lower extremity radiculopathy claim, the case should be readjudicated by the AOJ on the basis of additional evidence. If the benefit sought is not granted, the Veteran and his representative should be furnished a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.



The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals
Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).